[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action by the plaintiff wife against the defendant husband for dissolution of marriage based upon irretrievable breakdown. At trial, both parties testified and placed documentary material into evidence. Both parties submitted written claims for relief. The court evaluated the credibility of the parties and observed their demeanor. Based upon all of those factors, the court makes the following findings of fact.
The plaintiff, then known as Sima Ocadchie, married the defendant in Kiev, U.S.S.R. on September 26, 1978. At the time of the marriage, both parties were forty three years old and had known each other for a year, during six months of which they had lived together. The wife, who had been divorced from her prior CT Page 13942 husband for seven years, was self supporting. The husband had been married twice before. Both had children from their prior marriages, but no children were born of this marriage. The court has jurisdiction, and all statutory stays have expired. The marriage of the parties has broken down irretrievably.
During their marriage, the parties achieved a remarkable degree of personal and material success, particularly in view of the circumstances under which they began. When they married, the wife had a high school diploma and post-secondary certification in both sewing and bookkeeping. The husband was a graduate mechanical engineer with substantial work experience in plastics. In 1979, they left the Soviet Union, taking the husband's mother but none of their children. Although they took some Russian souvenirs which could be sold for cash during their journey, and the wife took a sewing machine, they were not permitted to leave the country with more than $90 in cash each. On that fragile beginning, and with assistance from the Jewish Federation, they arrived in the United States and eventually settled in St. Louis, where they remained until coming to Connecticut in 1991. In St. Louis the wife worked a basic forty hour week but also worked overtime, worked four hours per week in a men's store, and took in some sewing at home. Her pay began at $4.15 per hour and rose to $10 per hour by 1991. The husband was unable to find a job for six months, but eventually began to work. The parties' extra money was saved for the purchase of a house, which was accomplished in 1981 with a $35,000 down payment.[1] Ten years later, the house was sold, by then free of mortgage, for $120,000, and the parties bought another house. That house was purchased for $235,000, which included the equity from the first house and $40,000 borrowed from the wife's son, who was later repaid. The second house has been sold and the parties have each received $126,000 from the proceeds.
In 1991, just after buying the second St. Louis house, the husband lost his job there, and the parties relocated to Connecticut.. in this state, the wife continued as a seamstress until her retirement at age sixty, while the husband went to work at a firm called Wiremold, where he continues to work. He oversees the efficiency and productivity of the machinery used to make new and existing products, often working eleven to twelve hours per day. His salary including profit sharing is $80,756 per year.
The parties separated in May of 1997 when the wife suspected CT Page 13943 the husband of having an affair[2], and again in April of 1998 when their attempted reconciliation ultimately failed. The husband demanded at that time that the wife leave, and she did. When the wife left in 1997, she took approximately $70,300 in joint assets with her. Although the parties negotiated both prior to and during their reconciliation concerning the return of those funds, they were not returned. The wife initially placed $67,000 in two certificates of deposit in her own name and most of the balance in a checking account. By her testimony, she has spent $25,000 of the $67,000 and has only $42,000 remaining. In fact, the amount originally taken is $70,300, so if the wife has only $42,000 left, $28,300 was spent by her. In addition, she has had the use of the entire interest on the money since 1997. Although the precise amount of total interest was not proven, she earned $302.67 on the $67,356 in a two month period in 1997.
The husband has the following assets in his name:
 Miscellaneous banking $ 800 Savings Bank of Manchester 101,806 401k 80,346 IRA 16,748 IRA Galaxy 5,241 IRA Fleet 45,305 IRA Paine 8,295 Wiremold pension 79,108 __________ TOTAL $ 338,446
The wife has the following assets in her name:
 IRA Citibank $ 28,905 IRA Nationsbank 5,499 IRA St. Paul Federal Bank (2) 9,557 IRA Paine Webber 8,260 American General Annuity 2,593 Citibank deposits 168,168 St. Paul Federal Bank 195 _________ TOTAL 197,177[3]
In addition, the wife has jewelry with an appraised value of $25,340, nearly all of it gifts from the husband. Both parties have cars. The husband borrowed against a $26,000 certificate of deposit to finance his car, while the wife took an automobile CT Page 13944 loan of nearly the same amount to purchase hers.
The wife claims that the husband is liable to her for certain expenses she incurred in connection with the divorce. In part, she seeks that $5,000 be paid toward her attorney fees. The court finds the sum fair and reasonable, and will address whether any sum should be awarded in the orders. In addition, the wife claims expenses for having had to vacate the marital home, move to Illinois where her son lives, and come back and forth from there to attend court. These expenses include $2,000 needed to go to Illinois in 1997 and $2,000 for expenses associate with subsequent court appearances. In addition, she incurred $450 for unreimbursed costs for eye surgery, $7,000 for federal income taxes related to her receipt of alimony and capital gains, and $1,900 for moving and storage. Finally, she claims that the husband kept two payments received from the St. Louis rental beyond those authorized by the court and took $3,800 between 1997 and 1998 from marital assets.
The wife's early retirement at age sixty was prompted by the husband. At present, she has health conditions which affect her ability to work in her profession, including cataracts and pain in her right leg. The use of her eyes and legs is required for sewing. In addition, she is being treated for depression. The husband will retire when he reaches sixty-five. His work has become more demanding, and his energy level has declined. In short, neither party is expected to be working beyond a very short time.
The husband abused alcohol at various times in the marriage, sometimes to the embarrassment of the wife. It is also clear that the husband had activities outside the house that he kept hidden from the wife. Although he lied to her about his contacts with another woman and caused her justifiable suspicion, however, there is insufficient proof to establish that he was in an improper relationship. His subterfuge about his activities, however, is a cause of the breakdown of the marriage. A greater cause is the pride and mutual jealousy both parties felt. The court has weighed the question of fault in formulating its orders, but does not find that fault is entitled to great weight.
Despite this finding, however, the court does find that the wife was required to incur expenses for moving and that, because she left the state to live near her son after the separation, her costs for litigation were increased. She has claimed these costs CT Page 13945 in her testimony, as previously discussed.
The court has jurisdiction, and all statutory stays have expired. The court has taken into account the statutory criteria in Sections 46b-62, 46b-81, and 46b-82 as well as relevant caselaw. Based upon the evidence and the inferences which can reasonably be drawn from it, the court enters the following orders:
1. The marriage of the parties, having broken down irretrievably, is hereby dissolved.
2. The husband shall pay the wife periodic alimony of $500.00 per week during the wife's lifetime.
The amount of alimony shall be subject to a second look at the later of the husband's sixty-fifth birthday or retirement. The term of alimony shall not be modifiable. Alimony shall terminate upon the death of either party, the wife's remarriage, or the wife's cohabitation with another person.
3. The parties shall retain the personal property including jewelry, furniture, and automobiles presently in their possession.
4. The husband shall maintain his existing life insurance naming the wife as beneficiary so long as he has an obligation to pay alimony. This order is in the nature of support, and the amount of life insurance required to be maintained may be modified upon any modification of alimony.
5. The husband shall transfer to the wife by Qualified Domestic Relations Order (QDRO) or as otherwise required the Fleet IRA in the amount of $45,305. In addition, the husband shall pay the wife the sum of $11,200.00 in cash within sixty days hereof by making payment to the wife's attorney for her benefit.[4]
6. The husband shall pay the wife the sum of $4,000 toward her litigation expenses and counsel fees.[5]
7. The wife shall be entitled to COBRA benefits for health insurance for herself through the husband's employer through whatever plan she may choose or elect, at her expense.[6]
CT Page 13946
BY THE COURT,
GRUENDEL, J.